FILED
7/26/21 2:38 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 17-22147-GLT |
| **RONALD S. JONES**, | : | Chapter 7 |
| *Debtor.* | : | |
| | : | |
| **ROBERT SHEARER**, as chapter 7 trustee of the Estate of Ronald S. Jones, | : | |
| *Plaintiff,* | : | |
| v. | : | Adv. Pro. No. 19-02096-GLT |
| **RONALD S. JONES**, and **GRACE M. BETANCOURT-JONES**, | : | Related to Dkt. Nos. 1, 30, and 68 |
| *Defendants.* | : | |

| | |
|---|---|
| Samuel R. Grego, Esq.<br>Dickie, McCamey & Chilcote, P.C.<br>Pittsburgh, PA<br>*Attorney for the Plaintiff* | Glenn R. Bartifay, Esq.<br>Bartifay Law Offices, P.C.<br>Murrysville, PA<br>*Attorney for the Defendants* |

## **MEMORANDUM OPINION**

Mediating parties must act in good faith. The question here is whether the Defendants, Ronald Jones and Grace Betancourt-Jones, did so. In general, they demanded and engaged in mediation with the chapter 7 trustee but, after an agreement was reached, declined to memorialize it. Instead, the Defendants tried to re-negotiate the settlement before ultimately abandoning it all together. Having considered the proffered explanations for their conduct in light of the record, the Court finds that the Defendants did not participate in mediation in good faith, thereby warranting the imposition of monetary sanctions.

I.  **BACKGROUND**

Ronald Jones filed his chapter 7 petition in 2017.[1] Since then, he has been a party to two adversary proceedings challenging the transfer of his sole interest in his house[2] to himself and his wife Grace as tenants by the entireties.[3] The first action, prompted by a complaint filed by creditor Terri Patak, was resolved in *Patak v. Jones,* when the Court denied Ronald a discharge on multiple grounds, including a finding that he transferred the Property with actual intent to hinder, delay, or defraud creditors.[4] Robert Shearer, the chapter 7 trustee, later filed this adversary proceeding seeking to avoid the transfer. Subsequent mediation did not resolve the dispute, and the trustee successfully avoided the transfer on summary judgment.[5] Although the adversary is substantially concluded, the Court must now consider whether the Defendants mediated in good faith.

The Defendants requested an opportunity to mediate the trustee's adversary shortly before summary judgment motions were due.[6] The trustee was dubious about the Defendants' intent and considered the motion to be a delay tactic based on his belief the holdings in *Patak v. Jones* entitled him to summary judgment. All the same, the Defendants fervently insisted they were ready to settle.[7] After two hearings on the topic, the trustee eventually capitulated to

---

[1]  See Case No. 17-22147-GLT, *Chapter 7 Voluntary Petition*, Dkt. No. 1, filed on May 22, 2017.

[2]  The subject property, located in Indiana Township (the "Property"), was transferred by a deed recorded on May 25, 2016, within one year of Ronald's bankruptcy petition date. Patak v. Jones (In re Jones), 2020 WL 1903804, at *4 (W.D. Pa. April 1, 2020).

[3]  See Adv. Pro. No. 17-02222-GLT.

[4]  See Patak v. Jones, 2020 WL 1903804. Ms. Patak filed the complaint in October 2017, and after the Court ruled in her favor no appeal was timely filed.

[5]  *Order Granting Motion for Summary Judgment*, Dkt. No. 99.

[6]  *Motion for Mediation*, Dkt. No. 30.

[7]  *Trustee's Response to Motion for Mediation*, Dkt. No. 35 at ¶ 5; *Status Report*, Dkt. No. 51 at ¶ 4.

mediation when the Defendants agreed to prepay the mediator's fee, subject to the trustee's agreement to reimburse up to one-half of those fees from any recovery obtained "as a direct result of [m]ediation."[8] The Court issued a *Mediation Referral Order* requiring the Defendants and the trustee to, among other things, mediate in good faith.[9] Because Ms. Patak is not a party to *this* adversary proceeding, she was not included in the *Mediation Referral Order* even though the Defendants sought to compel her participation.[10]

Mediation occurred on November 23, 2020 before Judge Fitzgerald (ret.).[11] The next day, Judge Fitzgerald filed a *Certificate of Completion* verifying that the Defendants reached an agreement with the trustee but a resolution "was not reached between Creditor Terri Patak and [the Defendants.]"[12] Ms. Patak had apparently participated in mediation even though she was under no obligation to do so. Because the Defendants and the trustee came to an understanding, the parties were required by the *Mediation Referral Order* and Local Rule 9019-6(b) to submit a fully executed stipulation and proposed order.[13]

---

[8] *Mediation Referral Order*, Dkt. No. 58 at ¶ 4.

[9] *Mediation Referral Order*, Dkt. No. 58. The *Mediation Referral Order* stayed all pending proceedings and pretrial matters related to the subject matter of the mediation, including the two *Motion(s) for Summary Judgment* filed at Dkt. Nos. 36 and 47.

[10] *Motion for Mediation* at ¶¶ 7-11. Due to their supposedly limited resources, the Defendants hoped to avoid Ms. Patak's collection actions and to resolve their issues with the trustee in lieu of continuing to defend.

[11] *Mediator's Certificate of Completion*, Dkt. No. 62.

[12] Id. at ¶ 2-3.

[13] *Mediation Referral Order* at ¶ 9 ("In the event resolution of all or part of the outstanding issues occurs, then **within seven days of the conclusion of the Mediation, the parties shall file a joint settlement motion** along with the appropriate order ...") (emphasis in original); Local Rule 9019-6(b) ("If a settlement is reached at a mediation, a party designated by the mediator shall submit a fully executed stipulation and proposed order to the Court within seven (7) calendar days … If the party fails to prepare the stipulation and order, the Court may impose appropriate sanctions against the parties to the mediation. ...").

A stipulation was never filed, so the Court issued an *Order to Show Cause* requiring the parties to comply with their obligations.[14] In their response, the Defendants admitted they reached an agreement with the trustee, but they did not want their attorney to memorialize it.[15] Without further explanation, the Defendants requested more time for the parties to "come to terms."[16] For his part, the trustee relayed how, a month after the mediation, the Defendants tried to modify the settlement.[17] Although he entertained their overtures, the trustee was unwilling to modify the agreement and asked the Court to either enforce the mediated settlement (which remained unspecified) or adjudicate the summary judgment motions.[18]

At the parties' request, the Court granted several extensions to the stipulation deadline based on representations that they were "very close to a revised settlement."[19] After several weeks, the Defendants made an equity buyout offer to the trustee, which he rejected.[20] The Defendants then filed a status report asserting that the post-mediation settlement discussions failed.[21] Surprisingly, the Defendants also declared that they were now "reluctant to settle" at all

---

[14] *Order to Show Cause*, Dkt. No. 68. The *Order* established a new deadline by which the parties were required to file the stipulation.

[15] *Defendants' Response to Order to Show Cause*, Dkt. No. 71 at ¶ 4.

[16] Id.

[17] *Response of Chapter 7 Trustee to Order to Show Cause*, Dkt. No. 73 at ¶¶ 5-6.

[18] Id. at ¶ 7. The trustee did not define the terms of the mediation agreement.

[19] *(Fourth) Motion to Extend*, Dkt. No. 81 at ¶ 5; see also *(First) Motion to Extend*, Dkt. No. 72; *(Second) Motion to Extend*, Dkt. No. 75; and *(Third) Motion to Extend*, Dkt. No. 77.

[20] *Status Report*, Dkt. No. 84 at ¶ 4 (the "Final Report"); and *Response of Trustee to Debtor's Status Report*, Dkt. No. 85 at ¶ 4 (the "Final Report Response"). The Defendants' offer differed from the agreement reached at mediation.

[21] *Final Report* at ¶¶ 4-6.

and that no stipulation would be forthcoming.[22] Even though they had made an equity buyout offer, the Defendants asserted there was not enough unexempt equity to yield a recovery for unsecured creditors – except for the Internal Revenue Service, which holds both priority and nonpriority unsecured claims.[23] As a result, the Defendants contended that the trustee could not sell the Property, rendering this proceeding moot and depriving the Court of subject matter jurisdiction.[24] The trustee categorically denied these assertions and accused the Defendants of "unilaterally reneging" on the mediation agreement.[25]

The show cause hearing finally took place two months after the *Order* was issued.[26] At the hearing, the Defendants admitted that they agreed to sell the Property but "had a change of mind" after mediation and sought an equity buyout instead.[27] The Defendants tried to justify their about-face by alleging the mediation agreement had an equity-threshold contingency that the Property did not satisfy, even though they made an offer to buyout the equity from the trustee.[28] The Defendants then sought to excuse their behavior by stating, for the very first time, that they

---

[22]   *Final Report* at ¶ 6. The Defendants expressed no interest in a settlement involving an equity buyout, a deed from Defendants to Ronald, or any other arrangement.

[23]   *Final Report* at ¶¶ 5-6; see Case No. 17-22147-GLT, *Claim 1-1* at pg. 4.

[24]   *Final Report* at ¶ 7.

[25]   *Final Report Response* at ¶¶ 3-4.

[26]   *Hearing Held February 18, 2021*, Dkt. No. 86.

[27]   Transcript of February 18, 2021 Hearing ("Hearing Trans.") at 7:22-8:4. The Defendants at first reached out to Judge Fitzgerald to reopen formal mediation but then decided to communicate with the trustee and his counsel directly in order to defray costs. The Defendants also admitted it was their obligation to prepare and file the stipulation.

[28]   Id. at 15:20-24.

were confused by the mediation agreement and felt forced into it.[29] The trustee retorted that the entire mediation had been a ruse and the Defendants never intended to sell the Property.[30]

Rather than enforce an agreement that was never defined, the Court determined that mediation was essentially unsuccessful.[31] Even so, the Court advised that it would still consider whether the Defendants' actions throughout the mediation reflected good faith.[32] The Court eventually granted summary judgment for the trustee based on the findings of fact and law made in *Patak v. Jones*.[33]

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## III. DISCUSSION

In its discretion, the Court can streamline case preparation and presentation by scheduling pretrial conferences, including mediation,[34] and the Court is empowered to impose

---

[29] *Hearing Trans* at 15:3-8, 18:11-17. The Defendants did not identify what it was about the agreement that confused them or by whom or what they felt compelled to agree to it.

[30] Id. at 10:6-11.

[31] Id. at 19:4-15.

[32] Id. at 13:3-11.

[33] *Amended Scheduling Order*, Dkt. No. 88; *Order Granting Summary Judgment as to Counts I and V*, Dkt. No. 99.

[34] Fed. R. Civ. Pro. 16(a). Rule 16 is made applicable to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7016; Newton v. AC and S, Inc., 918 F.2d 1121, 1126 (3d Cir. 1990). Pretrial conferences conserve the resources of courts and parties alike by addressing pretrial issues quickly as opposed to letting them fester.

sanctions if parties fail to respond appropriately.[35] To that end, while the *Mediation Referral Order* did not require the parties to reach a settlement, it did require the parties to at least make a good-faith effort to do so.[36] Although sanctions issued under a court's inherent authority usually need a determination of *bad* faith,[37] evaluating *good* faith under Rule 16(f) does not require such an affirmative finding.[38] To establish whether the Defendants participated in good faith, the Court will examine the totality of the circumstances surrounding the mediation.

A simple request to mediate is not per se evidence of good or bad faith. Instead, the Court must analyze the Defendants' behavior from mediation preparation up through the show cause hearing, as the good-faith requirements of mediation extend beyond the conference itself. As such, the Court must be mindful that going into mediation, the universe of likely outcomes was limited by *Patak v. Jones* because, as the trustee correctly assumed, the decision entitled him to

---

[35] Fed. R. Civ. Pro. 16(f) Sanctions.
"(1) In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney:
  (A) fails to appear at a scheduling or other pretrial conference;
  (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or
  (C) fails to obey a scheduling or other pretrial order.
(2) Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

[36] *Mediation Referral Order*, Dkt. No. 58 at ¶ 6; Vay v. Huston, 2015 WL 791430, at *3 (W.D. Pa. Feb. 25, 2015) ("The [Court] does not require that a party settle a case. … It does, however, require that the parties engage in [the settlement] process in good faith."); United States v. Kavanaugh, 2012 WL 3746179, at *4 (W.D. Pa. Aug. 29, 2012).

[37] Chambers v. NASCO, Inc., 501 U.S. 32, 42-45 (1991). It is undisputed that courts have the inherent power to enforce their own orders.

[38] Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007); Coulter v. Paul Laurence Dunbar Cmty. Ctr., 765 Fed. Appx. 848, 854 (2019); Grigoryants v. Safety-Kleen Corp., 2014 WL 2214272 at *5.

avoid the transfer. Moreover, the fact that the Defendants never contested the applicability or impact of collateral estoppel suggests they understood that.[39]

Ultimately, the Defendants wanted to mediate, they mediated, and they left mediation with an agreement. And that agreement contemplated a sale of the Property. That said, the Defendants, knowing it was their obligation, intentionally failed to draft and file a stipulation memorializing the agreement. Most notably, even after being reminded of their obligations, the Defendants refused to comply. So why did the Defendants delay entering into a stipulation with the trustee?

According to the Defendants, they did not initially file a stipulation because they needed more time to "come to terms" with "Plaintiffs" [sic], presumably to convince Ms. Patak to sign on to the deal they had made with the trustee.[40] But it is unclear why Ms. Patak – a general, unsecured creditor – needed to be involved in an agreement to sell the Property. In retrospect, this excuse appears to have been a pretense as the Defendants quickly realized they wanted to keep the Property.[41] To that end, the Defendants offered the trustee a new deal: an equity buyout.

Conceptually, the Defendants' offer to purchase any unexempt equity in the Property is not per se inconsistent with their agreement to sell it. As a practical matter, an equity buyout remains a possibility until the Property is sold to someone else. For that reason, the Defendants' new settlement offer would not have inhibited the filing of a stipulation memorializing the agreement reached during mediation. The Court can appreciate a desire to finalize the equity figure and incorporate it into the stipulation, but the Defendants' subsequent conduct reveals that

---

[39] The Defendants did not contest that *Patak v. Jones* applied and controlled in any of the papers they filed in support of their *Motion for Summary Judgment* [Dkt. Nos. 47, 48, 92, 94, and 96].

[40] *Defendants' Response to Order to Show Cause* at ¶ 4.

[41] Furthering indicating that the Defendants' allegation about the necessity of Ms. Patak's involvement was a pretense, they returned to using the singular "Plaintiff" when negotiating a buyout with the trustee.

they abandoned any notion of a fair market sale. As soon as the trustee rejected their buyout offer, the Defendants declared that the Property did not have, and never had, any unexempt equity.

Not surprisingly, the Defendants' justification for asserting that there was no unencumbered equity, which conflicts with the fact that they made a buyout offer, is transparently contrived. According to their calculations, general, unsecured creditors will not receive a distribution due to a significant liability owed to the IRS. Yet that calculation is misleading because the IRS *is* an unsecured creditor, albeit one entitled to priority, that would be paid from the unencumbered sale proceeds. That the IRS will be paid before general, unsecured creditors does not elevate the claim to a security interest in the Property. In other words, the Defendants had to fudge the numbers to manufacture their assertion of no equity, which explains why they made the buyout offer in the first place.

Without an equity buyout agreement drafted on their terms, the Defendants have made clear that now they do not want to settle at all, even though they repeatedly confirmed in their *Motions to Extend* that such an agreement had been reached. Thus, not only did the Defendants refuse to memorialize the mediation agreement, they also refused to abide by it. Months after mediation concluded, they tried to justify this decision by asserting several "defenses" to undermine the mediation's legitimacy. These "defenses" were all raised within a week of the show cause hearing. To start, the Defendants claimed there was an equity-level sale contingency in their agreement that the Property did not satisfy, but if such a term existed, it is illogical that the Defendants would have hesitated to memorialize a contingency that would have prevented a sale. Next, they raised the peculiar contention that the Court *never* had subject matter jurisdiction to avoid the transfer and the adversary proceeding should be dismissed as moot, even though they admitted the Court had proper jurisdiction when they filed their request for mediation.

Finally, the Defendants argued that they felt forced into the mediation agreement and had been confused by it, but they did not say why or how, nor could they explain why they failed to raise this issue earlier in the proceedings.

In sum, the Court finds that the Defendants' actions throughout the mediation process were not substantially justified and display a lack of good faith. Because of their behavior, they delayed the adjudication of this adversary proceeding and multiplied the number of hearings the trustee had to attend and responses he was required to file, unnecessarily squandering the resources of the Court and this estate. Accordingly, the Defendants' conduct warrants the imposition of monetary sanctions to reimburse the trustee for this wasted effort. To be clear, the Court is not sanctioning the Defendants for a failure to come to an agreement. Rather, their refusal to memorialize the agreement they actually reached along with their pre- and post-mediation conduct informs the Court's decision.[42]

## IV.    CONCLUSION

Considering the Defendants' behavior, the Court finds that they did not participate in mediation in good faith, warranting reimbursement of the trustee's fees and costs associated with the mediation as a sanction. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate judgment consistent with this opinion.

Dated:  July 26, 2021

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Defendants
Samuel R. Grego, Esq.
Glenn R. Bartifay, Esq.

---

[42]    See United States v. Kavanaugh, 2012 WL 3746179, at *4 (W.D. Pa. Aug. 29, 2012) (Sanctioning party for delaying memorialization of a mediation agreement); Depositors Ins. Co. v. Velilla, 2013 WL 12131606, at *1 (S.D. Fla. July 30, 2013) (Parties sanctioned for repeatedly failing to file mediation-related documents within court-appointed deadlines, including failing to file a post-mediation report).